EAG/NMA:TM


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -              02-CR-307 (NGG)
                                 03-CR-929 (NGG)
JOSEPH MASSINO,

           Defendant.

- - - - - - - - - - - - - - - - -X


GOVERNMENT'S MOTION FOR RESENTENCING PURSUANT
TO FEDERAL RULE OF CRIMINAL PROCEDURE 35(b)


LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Taryn A. Merkl
Assistant U.S. Attorney
    (Of Counsel)

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 3

MASSINO'S COOPERATION . . . . . . . . . . . . . . . . . . 9

I.    Indicted Cases . . . . . . . . . . . . . . . 15

      A.    United States v. Basciano, <u>et al.</u>,
            05-CR-060 (NGG) . . . . . . . . . . . . 15

            1.    The Defendants Convicted by Guilty Plea . 17

                  a.    Michael Mancuso . . . . . . . . . 17

                  b.    Dominick Cicale . . . . . . . . . 18

                  c.    Anthony Indelicato . . . . . . . . 20

                  d.    Anthony Donato . . . . . . . . . 21

                  e.    Anthony Aiello . . . . . . . . . 22

                  f.    Frank Esposito ("Fat Frank") . . . . 23

            2.    The <u>Basciano II</u> Trial . . . . . . . . 24

      B.    Andres Threat Investigation . . . . . . . . 25

      C.    United States v. John Joseph Spirito & Patrick
            DeFilippo, 03-CR-929 (NGG) . . . . . . . . . 25

      D.    United States v. Urso, <u>et al.</u>,
            03-CR-1382 (NGG) . . . . . . . . . . . . 27

            1.    Louis Attanasio . . . . . . . . . . . 30

            2.    Peter Calabrese . . . . . . . . . . . 31

            3.    Richard Riccardi . . . . . . . . . . 32

      E.    United States v. Virtuoso, <u>et al.</u>,
            06-CR-800 (SLT) . . . . . . . . . . . . 32

            1.    Michael Virtuoso, Michael Cassese &
                  Agostino Accardo . . . . . . . . . . 34

2.   Anthony Rabito . . . . . . . . . . .   35

3.   Paul Spina  . . . . . . . . . . . .   36

4.   Jerome Asaro  . . . . . . . . . . .   37

F.   United States v. Carucci, et al.,
     08-CR-597 (CPS) . . . . . . . . . . .   37

G.   United States v. Bana, et al.,
     09-CR-672 (NGG) . . . . . . . . . . .   37

H.   United States v. Armando Rea, 10-CR-767 (JBW)   38

I.   United States v. Anthony Romanello,
     10-CR-929 (ILG) . . . . . . . . . . .   39

J.   United States v. Badalamenti, et al.,
     12-CR-050 (CBA) . . . . . . . . . . .   39

K.   United States v. Jimmy Cournoyer, et al.,
     12-CR-065 (S-2)(RJD) . . . . . . . . .   41

II.  Intelligence and Investigations . . . . . . . . . .   42

A.   Three Captains Body Search . . . . . . . . .   42

B.   Search Warrant for the Residence of Anthony
     Sclafani and the Person of Joseph Loiacono . .   43

C.   Electronic Surveillance  . . . . . . . . .   43

D.   Cooperation of Others  . . . . . . . . . .   43

CONCLUSION  . . . . . . . . . . . . . . . . . . . .   44

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum pursuant to Federal Rule of Criminal Procedure 35(b)(2)(B)[1] to move the Court, in its discretion, to resentence Joseph Massino in <u>United States v. Massino</u>, Docket Nos. 02-CR-307 (NGG) ("<u>Massino I</u>") and 03-CR-929 (NGG) ("<u>Massino II</u>").

As the Court is aware, in <u>Massino I</u>, Joseph Massino, the official boss of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family") was convicted of racketeering, racketeering conspiracy, conspiring to make and making extortionate extensions of credit, conspiring to use and using extortionate means to collect extensions of credit, extortion, illegal gambling and money laundering conspiracy after a multi-week jury trial that concluded in August 2004. As to the racketeering and racketeering charges, the jury found each of the twenty-five alleged predicate acts proved, including multiple acts of murder, attempted murder, conspiring to make and making extortionate extensions of credit, conspiring to use and using extortionate means to collect extensions of credit, arson and arson conspiracy, extortion, illegal gambling and money laundering conspiracy. The charged murders included the 1981

_____

[1]   Federal Rule of Criminal Procedure Rule 35(b)(2) provides, in pertinent part, that the Court may reduce a sentence upon motion by the government more than one year after sentencing "if the defendant's substantial assistance involved: . . . (B) information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing."

murders of Alphonse "Sonny Red" Indelicato, Philip "Phil Lucky"
Giaccone and Dominick "Big Trin" Trinchera (the murder of the
"Three Captains"); the 1981 murder of Dominick "Sonny Black"
Napolitano; the 1982 murder of Anthony Mirra; the 1982 attempt to
murder Anthony Giliberti; the 1984 murder of Ceasar Bonventre;
and the 1987 murder of Gabriel Infanti.

On June 23, 2005, Massino pled guilty in Massino II to
the 1999 murder of Gerlando Sciascia in aid of racketeering,
pursuant to a cooperation agreement.  That same day, the Court
principally sentenced Massino to life in prison in Massino I,
with a second life sentence to follow consecutively in Massino
II.  See Judgment, 02-CR-307, imposed June 23, 2005 (Docket Entry
901).  In addition, on July 11, 2005, the Court entered an order
of forfeiture requiring Massino to forfeit $7,672,581 in cash,
257 gold bars, Massino's interest in two businesses, and
additional real property.  See Forfeiture Order, 02-CR-307,
Docket Entry No. 902.  On June 28, 2005, the government filed a
pro forma Rule 35 motion,[2] and requested that the Court hold the

---

[2]  At the time the June 28, 2005 letter was filed, Federal
Rule of Criminal Procedure 35(b)(1) provided, as a general
matter, that courts could reduce a previously-imposed sentence
"[u]pon the government's motion made within one year of
sentencing."  Fed. R. Crim. P. 35(b)(1) (2005).  Accordingly, the
government filed the June 28, 2005 letter as a pro forma Rule 35
motion, requesting that it be held in abeyance so as to preserve
the ability of the government to file a motion in the event that
Massino's cooperation in fact provided substantial assistance in
the investigation and prosecution of cases.

government's Rule 35 Motion for Massino in abeyance until such time as the government submitted a supplemental letter outlining the extent of Massino's assistance to the government.

For the reasons detailed below, the government respectfully submits this memorandum in support of its motion to resentence Massino in <u>Massino I</u> and <u>Massino II</u> due to his substantial assistance in the investigation and prosecution of multiple significant cases.

BACKGROUND

Massino's personal history and the background of his cooperation are well-known to this Court and are recounted in detail in both his Pre-Sentence Investigation Report ("PSR") and his testimony before this Court in <u>United States v. Basciano</u>, 05-CR-060 ("<u>Basciano II</u>").  To briefly summarize, Massino was arrested on January 9, 2003,[3] together with his brother-in-law Salvatore Vitale, Bonanno captain Frank Lino and Bonanno associate Ronald Filocomo.  At the time of his arrest, Massino was the longstanding boss of the Bonanno family and one of the most powerful members of the mafia in the United States.  In a series of superseding indictments, Massino was charged with racketeering and racketeering conspiracy, which charged as

---

[3]  Massino has been incarcerated since his arrest.  He has thus been in jail for approximately ten and one-half years.  With good-time credit, Massino has thus far served a sentence of approximately twelve years.

predicates a wide array of crimes spanning more than three decades, including arson, loansharking, money laundering, illegal gambling, extortion, murder, murder conspiracy, and attempted murder. On July 30, 2004, after a twelve-week trial, an anonymous jury returned a guilty verdict against Massino, convicting him of each crime charged.

As established at trial, Massino was a feared leader of the Bonanno family who used murder to consolidate power in his rise to the position of boss. He also was willing to participate in murders when asked to do so by others in organized crime. As detailed in Massino's own testimony, as official boss, Massino ordered the murder of 1999 Gerlando Sciascia. In addition, as a Bonanno family member who was close with former boss Phil "Rusty" Rastelli, Massino was involved in approving, planning and orchestrating several other murders. As detailed in his testimony at the Basciano II trial, Massino organized and participated in the murders of Tommy "Zooma," Joseph "Doo Doo" Pastore, the Three Captains, Dominick "Sonny Black" Napolitano and Vito Borelli. In addition, he had a role in ordering and approving the murders of Anthony Mirra, Caesar Bonventre, Gabriel Infanti, Russell Mauro and Joseph Lopresti.

At his 2004 trial, Massino was tried on the following counts – and convicted of each one:

| Count | Description |
|---|---|
| 1 | Racketeering (Title 18, United States Code, Section 1962(c)) |
| 2 | Racketeering Conspiracy (Title 18, United States Code, Section 1962(d)) |
| 3 | Extortionate Collection of Credit Conspiracy (Title 18, United States Code, Section 894(a)(1)) |
| 4 | Extortionate Extension of Credit Conspiracy (Title 18, United States Code, Section 892(a)) |
| 5 | Illegal Gambling – Joker Poker Machines (Title 18, United States Code, Section 1955) |
| 6 | Illegal Gambling Conspiracy – Baccarat (Title 18, United States Code, Section 371) |
| 7 | Illegal Gambling – Baccarat (Title 18, United States Code, Section 1955) |
| 8 | Extortion of John Doe #1 and John Doe #2 (King Catering Extortion) (Title 18, United States Code, Section 1951(a)) |
| 9 | Money Laundering Conspiracy (Title 18, United States Code, Section 1956(h)) |
| 10 | Extortionate Extension of Credit – John Doe #3 (Peter Calabrese) (Title 18, United States Code, Section 892(a)) |
| 11 | Collection of Extensions of Credit by Extortionate Means – John Doe #3 (Peter Calabrese) (Title 18, United States Code, Section 894(a)(1)) |

As part of the Count One and Count Two racketeering and racketeering conspiracy charges, the jury found proved each of the twenty-five predicate acts charged as follows:

| Racketeering Act # | Description |
| --- | --- |
| 1a | Extortionate Extension of Credit Conspiracy (Title 18, United States Code, Section 892(a)) |
| 1b | Extortionate Collection of Credit Conspiracy (Title 18, United States Code, Section 894(a)(1)) |
| 2a | Arson Conspiracy (New York Penal Law Sections 150.10 and 105.10) |
| 2b | Arson (New York Penal Law Sections 150.10 and 20.00) |
| 3 | Murder of Alphonse "Sonny Red" Indelicato (New York Penal Law Sections 125.25(1) and 20.00) |
| 4 | Murder of Philip "Phil Lucky" Giaccone (New York Penal Law Sections 125.25(1) and 20.00) |
| 5 | Murder of Dominick "Big Trin" Trinchera (New York Penal Law Sections 125.25(1) and 20.00) |
| 6a | Conspiracy to Murder Dominick "Sonny Black" Napolitano (New York Penal Law Sections 125.25(1) and 105.15) |
| 6b | Murder of Dominick "Sonny Black" Napolitano (New York Penal Law Sections 125.25(1) and 20.00) |
| 7a | Conspiracy to Murder Anthony Mirra (New York Penal Law Sections 125.25(1) and 105.15) |
| 7b | Murder of Anthony Mirra (New York Penal Law Sections 125.25(1) and 20.00) |
| 8a | Conspiracy to Murder Anthony Giliberti (New York Penal Law Sections 125.25(1) and 105.15) |
| 8b | Attempted Murder of Anthony Giliberti (New York Penal Law Sections 125.25(1), 110.00 and 20.00) |

| Racketeering Act # | Description |
|---|---|
| 9a | Conspiracy to Murder Caesar Bonventre (New York Penal Law Sections 125.25(1) and 105.15) |
| 9b | Murder of Caesar Bonventre (New York Penal Law Sections 125.25(1) and 20.00) |
| 10 | Illegal Gambling – Joker-Poker Machines (Title 18, United States Code, Sections 1955 and 2) |
| 11 | Illegal Gambling – Baccarat (Title 18, United States Code, Sections 1955 and 2) |
| 12a | Conspiracy to Murder Gabriel Infanti (New York Penal Law Sections 125.25(1) and 105.15) |
| 12b | Murder of Gabriel Infanti (New York Penal Law Sections 125.25(1) and 20.00) |
| 13 | Extortion Conspiracy – John Doe #1 and John Doe #2 (Title 18, United States Code, Section 1951(a)) |
| 14 | Money Laundering Conspiracy (Title 18, United States Code, Section 1956(h)) |
| 15a | Illegal Gambling – Sports Betting (Federal Gambling Law) (Title 18, United States Code, Sections 1955 and 2) |
| 15b | Illegal Gambling – Sports Betting (State Gambling Law) (New York Penal Law Sections 225.10(1) and 20.00) |
| 16a | Extortionate Extension of Credit Conspiracy – John Doe #3 (Peter Calabrese) (Title 18, United States Code, Section 892) |
| 16b | Extortionate Collection of Credit Conspiracy (Peter Calabrese) (Title 18, United States Code, Section 894(a)(1)) |

In addition to convicting Massino of these crimes, the jury also returned a forfeiture judgment for $10,393,350, as well as the forfeiture of the Casablanca Restaurant and Café Via Veneto.

Shortly after the jury returned its verdict of guilt, Massino indicated to the Court, through representatives of the U.S. Marshals Service, that Massino wanted to meet with the government.  The Court appointed counsel for Massino, who ultimately met with the government on a number of occasions. After the proffers began, however, the Attorney General of the United States directed the government to seek the death penalty against Massino for the murder of Gerlando Sciascia in aid of racketeering, which was charged in Massino II.  (See Minute Entry dated November 12, 2004, 03-CR-929, Docket Entry No. 162).

Thereafter, on November 19, 2004, the government arrested Vincent Basciano, the then-acting boss of the Bonanno family.  See United States v. Basciano, 03-CR-929 ("Basciano I"). Basciano was initially charged with racketeering conspiracy involving illegal gambling, the murder of Frank Santoro, attempted murder, arson and arson conspiracy; and illegal gambling.  See Indictment, dated November 18, 2004, 03-CR-929(S-2)(NGG) (Docket Entry No. 165).

On December 1, 2004, shortly after Basciano's incarceration, Bonanno associate Randolph Pizzolo was found murdered in Greenpoint, Brooklyn.  Thereafter, Massino again informed the government of his interest in cooperating, and advised that Basciano had ordered Pizzolo's murder and was also seeking to murder Basciano's then-prosecutor, Assistant U.S.

8

Attorney Greg Andres.  Massino thereafter agreed to wear a recording device to consensually record conversations that he had with Basciano at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  Although Massino did not yet have an agreement to cooperate, the government provided him with a recording device and he consensually recorded two conversations with Basciano in early January 2005 (referred to herein as the "Massino Tapes").

Massino is now 70 years old and stands before this Court having been convicted of extremely serious crimes.  For the majority of his adult life, he was a leader of one of the most dangerous and powerful criminal organizations in the United States.  As set forth above, he has participated in multiple murders, both personally and by directing others to commit murder.  However, Massino has also testified about his crimes in open court and helped to dismantle the very organization to which he had once sworn his loyalty - and as to which he had dozens of men swear their loyalty.  Massino's cooperation thus provided substantial assistance in the investigation and prosecution of many members and associates of La Cosa Nostra.

### MASSINO'S COOPERATION

The two consensual recordings that Massino made in early January 2005 are extremely notable for several reasons.  First, they captured devastating evidence against Basciano for

9

the then-recent murder of Pizzolo, in that Basciano is heard detailing the reasons that he ordered the Pizzolo homicide and discussing the specifics of the plot to kill Pizzolo, which had been set into motion prior to Basciano's November 19, 2004 arrest. Second, the recordings contain extraordinary enterprise evidence pertaining to the Bonanno family and La Cosa Nostra as the conversations - between the official boss and an acting boss of one of the five New York City families - covered a wide range of topics, including the internal structure of the Bonanno family, the various rackets in which the family was engaged, as well as discussion regarding a large number of Bonanno family members and associates, and members and associates of other crime families. Third, the recordings contain statements that support Massino's prior report to the government that Basciano had spoken with Massino shortly after his arrest (in the bullpen in the federal courthouse) regarding Basciano's desire to kill AUSA Andres. The recordings Massino made have been used in the investigation and prosecution of many cases, including, but certainly not limited to, the prosecution of Basciano and others for the 2004 murder of Randolph Pizzolo.

In addition to making the Massino Tapes, the information that Massino provided to the government during debriefing has been of significant value to the government. During proffer sessions with the government, Massino was

forthcoming and helpful.  He provided specific, detailed information regarding his personal history, his induction into the Bonanno family, and the inner workings of the Bonanno family and La Cosa Nostra in New York City, including information about all five New York City-based families, as well as the Decavalcante family and the Bonanno family's connections to narcotics trafficking in Montreal, Canada.

Massino also admitted his role in, and identified others' roles in, additional murders and murder conspiracies, including the murder of Tommy "Zooma" in the late 1960s (which was previously unknown to law enforcement), the 1976 murder of Joseph "Doo Doo" Pastore, the murder of Vito Borelli in the late 1970s or approximately 1980, the 1986 murder of Robert Capasio, the murder of Joseph Lopresti in the late 1980s or early 1990s, and conspiracies to murder Anthony "Bruno" Indelicato (in 1981) and Anthony Donato (in approximately 1993).  He also admitted his involvement in myriad other crimes, including extortion, loansharking, arson, insurance fraud, theft, auto theft, robbery, money laundering, labor racketeering involving Teamsters Local 814,[4] unlawful flight to avoid prosecution, dealing in stolen

---

[4]  In 1987, Massino was convicted after trial, see 85-CR-354 (E.D.N.Y.), of racketeering conspiracy, receiving unlawful labor payments (in violation of 29 U.S.C. § 186(b)(1)), and extortion, related to a scheme to control Teamsters Local 814, to accept unlawful payments of money from employers utilizing Teamsters' labor, and to engage in price- and bid-fixing in regard to moving contracts utilizing Teamsters Local 814 laborers.

property, illegal possession of weapons, illegal cigarette trafficking, gambling, shoplifting and assault.  In addition, Massino admitted that although he regularly filed tax returns, he failed to report illegal income on his taxes.

Massino also detailed numerous additional crimes that were unknown to the government, such as his bribery of law enforcement officers during the 1960s to avoid prosecution; making a false statement to the court about his conduct to obtain the dismissal of federal theft from interstate shipment charges in the mid-1970s (before the Hon. Judge Neaher, docket number unknown), which charges were dismissed in 1977; arranging to have fingerprint cards destroyed after an arrest while he was a fugitive from justice in the 1980s; participating in a heroin distribution conspiracy during the period of time that he was a fugitive from justice in the 1980s; bribing a prison guard to bring contraband food into the Metropolitan Correctional Center in approximately 1987; falsely advising the U.S. Probation Department that he was "innocent" of the charges of which he was convicted in 85-CR-354 (see note 4, supra); and lying to his probation officer while he was under supervision by the Probation Department.

With respect to his personal history, Massino testified at length during the Basciano II trial about how he was introduced to organized crime, and his involvement in myriad

12

crimes over his more than thirty years of involvement in La Cosa Nostra.  A copy of Massino's direct examination is included as Exhibit A in the government's appendix in support of this motion. It details Massino's involvement in homicides and other crimes for which he was never charged, as well as various other crimes that Massino admitted to the government as part of his cooperation.  Massino's encyclopedic knowledge of the mafia in New York City, and his candor regarding his own crimes and those of others made him a credible and effective witness.

During his cooperation, Massino has been debriefed on dozens of occasions by agents of the Federal Bureau of Investigation and prosecutors, and by representatives of the Royal Canadian Mounted Police.  Also as part of his cooperation, Massino spent significant amounts of time reviewing the Massino Tapes in order to assist the government with the preparation of accurate transcripts and in preparing for trial.  He provided specific information on what the conversations were about (due to the fact that the conversations, like many mafia conversations, are at times difficult to understand due to mafia members' use of guarded language, nicknames, slang and shorthand terms) and he also identified the nicknames of the numerous organized crime members and associates that were discussed during the conversations.

13

Massino's extensive historical information and the consensual recordings he made have proven to be extremely valuable to the government's long-term effort to dismantle La Cosa Nostra.  This memorandum summarizes the specific cases and investigations as to which Massino provided information.

During debriefings, Massino provided information about hundreds of individuals associated with organized crime, including members and associates of all five La Cosa Nostra families that are based in New York City.  The information that Massino provided has been used in the prosecution of ten cases, and has greatly assisted the government in the continued dismantlement of La Cosa Nostra and the Bonanno family, in particular.  Massino's cooperation was instrumental in the prosecution of many significant Bonanno family leaders, who took control of the family after the arrests of Massino and Vitale. As detailed herein, his cooperation was useful in the investigations of four successive leaders of the Bonanno family, including Vincent Basciano, Michael Mancuso, Salvatore Montagna[5] and Vincent Badalamenti.  Massino's information and cooperation also aided in the prosecution of many others, including the

---

[5]  In 2009, Salvatore Montagna, the then-acting boss of the Bonanno family, was deported to Canada based, in part, upon information provided by Massino.  Specifically, Massino was willing to testify to Montagna's association with and induction into the Bonanno family, as well as his participation in illegal activity including extortion, loansharking and illegal gambling.

extremely dangerous crew of young mafiosi headed by Vincent Basciano, which included, among others, Dominick Cicale, Anthony Donato, Anthony "Ace" Aiello and Joseph "Joey" Gambina.  Due to Massino's cooperation and the making of the Massino Tapes, that crew was dismantled and the members of it, along with many other members and associates of La Cosa Nostra, have been held responsible for their crimes.

I.   <u>Indicted Cases</u>

    A.   <u>United States v. Basciano, et al., 05-CR-060 (NGG)</u>

       As noted above, Massino informed the government in the fall of 2004, shortly after Pizzolo's murder, that Massino had learned from Basciano that Basciano had ordered the homicide. Massino thereafter made the Massino Tapes in January 2005, which captured lengthy conversations between Massino and Basciano discussing a multitude of members and associates of organized crime, a wide range of criminal activity, and detailed statements by Basciano regarding the Pizzolo murder.  Based in large part on the Massino Tapes, in January 2005, Basciano and Dominick Cicale were indicted and charged for their roles in the Pizzolo murder. Both men were initially charged with conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and firearms charges, in violation of 18 U.S.C.

§ 924(c).  The murder in aid of racketeering count exposed both defendants to the death penalty.

In addition, also starting in 2005, a grand jury sitting in the Eastern District of New York returned a series of superseding indictments charging Basciano, Bonanno family acting boss Michael Mancuso, Bonanno family captain Dominick Cicale, and Bonanno family soldiers Anthony "Bruno" Indelicato, Anthony Donato, and Anthony Aiello, among others.  These defendants were charged with a variety of racketeering-related crimes including the February 15, 2001 murder of Frank Santoro and the November 30, 2004 murder of Bonanno family associate Randolph Pizzolo.

Pizzolo's body was found in the street in an industrial section of Greenpoint, Brooklyn.  He had been shot numerous times.  His vehicle, a new BMW, was left idling nearby and his wallet was found on his body.  Pizzolo was an associate of the Bonanno family who, in 2004, was assigned to Basciano's crew, and it was Basciano who ordered Pizzolo's murder.

Each of the defendants except Basciano pled guilty before trial.  As discussed below, Basciano proceeded to trial – his third – resulting in his third conviction.  Details relating to each defendant and the resolution of these charges is detailed below.  Massino was a crucial witness in this prosecution. Specifically, he had conversations regarding the Santoro and Pizzolo murders with direct participants in each of the

16

homicides: he had personally discussed both murders with Basciano and the Santoro murder with Indelicato.  In addition, as noted above, the Massino Tapes contain extensive statements by Basciano regarding the Pizzolo murder and a host of other crimes.

In anticipation of the trial that was scheduled against Mancuso, Indelicato, Donato and Aiello in 2008, Massino met with the government to prepare for his testimony on multiple occasions and was available as a witness.  Even though those defendants did not ultimately proceed to trial, the government believes that the defendants' knowledge of Massino's availability as a witness, combined with the damning coconspirator admissions by Basciano that implicated all of the coconspirators in the murder of Randolph Pizzolo, was heavily influential in these defendants' decisions to plead guilty.

1.   <u>The Defendants Convicted by Guilty Plea</u>

As further discussed below, defendants Mancuso, Cicale, Indelicato, Donato and Aiello all pled guilty prior to trial.

a.   <u>Michael Mancuso</u>

At the time of his arrest, Mancuso was the acting boss of the Bonanno family, and thus the highest ranking member of the family at liberty.  Mancuso was charged with murder in aid of racketeering, conspiracy to commit murder in aid of racketeering and firearms possession in furtherance of those crimes, all relating to the November 2004 Pizzolo murder.

17

Mancuso has a long history of involvement in crimes and acts of violence, and his conviction was an important one in the ongoing fight against organized crime.  As the Court knows, Mancuso has a serious criminal history including a 1978 New York state felony conviction for criminal possession of a weapon, a 1986 New York state felony conviction for manslaughter (for the killing of his wife), and various 1996 New York state misdemeanor convictions for menacing, assault, resisting arrest, and attempted assault.

On August 6, 2008, Mancuso pled guilty to the conspiracy to murder Bonanno family associate Randolph Pizzolo in aid of racketeering and another count of illegal gambling.  The statutory maximum sentence for these crimes is fifteen years' imprisonment.  On December 16, 2008, this Court sentenced Mancuso to the maximum fifteen-year sentence, three years of supervised release, and a $200 special assessment.

Massino provided significant, and specific, information about Mancuso, including his role in and association with the Bonanno family, and his involvement in the murder of Bonanno family associate Randolph Pizzolo, which Massino learned from Basciano, and which was detailed on the Massino Tapes.

b.   <u>Dominick Cicale</u>

Massino has never met Dominick Cicale.  Nonetheless, he provided substantial assistance in his arrest and prosecution.

18

As noted above, the original charges brought against Cicale pertained to the murder of Randolph Pizzolo in aid of racketeering, about which Basciano made lengthy admissions to Massino.  Those admissions squarely inculpated Cicale and the other participants in the homicide.  Accordingly, Cicale was charged in January 2005 with conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and firearms charges, in violation of 18 U.S.C. § 924(c).  These charges were repeated in various superseding indictments, returned on March 30, 2005, June 20, 2005 and November 2, 2005.

On February 13, 2006, Cicale pled guilty to racketeering conspiracy involving multiple predicate acts, including the murder of Frank Santoro, the murder of Randolph Pizzolo, illegal gambling, conspiring to use and using extortionate means to collect an extension of credit and robbery conspiracy; the murder of Frank Santoro in aid of racketeering; an assault in aid of racketeering; and the murder of Randolph Pizzolo in aid of racketeering.  Despite having never met Cicale, in light of the extremely damaging evidence Massino was able to provide against Cicale, in the form of Basciano's coconspirator statements and the Massino Tapes, the government believes that Massino's availability as a witness against Cicale played a large role in Cicale's decision to plead guilty.

c. <u>Anthony Indelicato</u>

Bonanno family soldier (and former captain) Anthony Indelicato was charged with racketeering, which included predicate acts of murder and murder conspiracy, relating to the 2001 murder of Frank Santoro, and a predicate act of conspiring to murder Bonanno captain Patrick DeFilippo. Indelicato was also charged with substantive counts for the DeFilippo murder conspiracy and the Santoro murder.

Indelicato is a longstanding member of the Bonanno family, and he has a significant history of violence, including his 1986 conviction in the "Commission" case for his role as a shooter in the murders of Bonanno acting boss Carmine Galante, Leonard Coppolla and Giuseppe Turano. <u>See</u> <u>United States v.</u> <u>Indelicato</u>, 865 F.2d 1370, 1372 (2d Cir. 1989). Indelicato and his coconspirators, wearing masks, entered a Brooklyn restaurant where Galante and others were eating and shot them to death. Indelicato's palm print was found on the inside of a door of the getaway car. <u>See</u> <u>id.</u>

On August 6, 2008, Indelicato pled guilty to racketeering conspiracy, including predicate acts of murder conspiracy (Frank Santoro) and marijuana distribution conspiracy. Indelicato's Sentencing Guidelines carried a range of imprisonment from thirty years to life, but the statutory maximum penalty was twenty years. On December 16, 2008, this Court

20

sentenced Indelicato to the maximum term of imprisonment available - twenty years - plus three years of supervised release and a $100 assessment. Massino was available and prepared to testify against Indelicato. Massino has known Indelicato for decades, and provided extensive information about Indelicato and his involvement in the Santoro murder, which Massino had learned from speaking directly with Indelicato and others about that murder. Massino is also knowledgeable about Indelicato's involvement in other acts of violence, including the Galante murder, as well as his lengthy history of involvement in the Bonanno family. Massino's availability as a witness almost certainly contributed to Indelicato's decision to plead guilty.

### d. Anthony Donato

The superseding indictment returned on February 15, 2006, charged Bonanno family soldier Anthony Donato with murder in aid of racketeering, conspiracy to murder in aid of racketeering, and firearms possession in regard to crimes of violence, all relating to his participation in the 2001 murder of Frank Santoro. At the time of his indictment, Donato was incarcerated and pending sentencing for his prior guilty plea to racketeering charges in Basciano I, including the 1985 racketeering-related attempted murder of David Nunez.

Donato resolved the charges in this indictment by pleading guilty, pursuant to a plea agreement, to the conspiracy

21

to murder Frank Santoro in aid of racketeering, in violation of
Title 18, United States Code, Section 1959(a)(5).  The terms of
his plea agreement incorporated the terms of his prior plea
agreement in Basciano I, 03-CR-929 (NGG).  On December 16, 2008,
Donato was sentenced to twenty-five years' imprisonment, three
years of supervised release and a $300 special assessment.
Massino, who had inducted Donato into the Bonanno family after
Donato was proposed for membership by Basciano, provided specific
information about Donato's association and rank in the Bonanno
family, as well as his involvement in acts of violence, including
the Santoro murder, which Massino had learned from Basciano, as
detailed in his trial testimony in Basciano II.  Massino was thus
available to serve as a witness against Donato, and Massino's
availability as a witness likely played a role in Donato's
determination to plead guilty.

       e.   Anthony Aiello

      Massino has never met Anthony Aiello.  Despite that,
Massino's cooperation led to the arrest and apprehension of
Aiello, a Bonanno family soldier.  Aiello, who was a fugitive for
some time, was ultimately apprehended in March 2005, in Syracuse,
New York.  On August 6, 2008, Aiello pled guilty to racketeering,
in violation of Title 18, United States Code, Section 1962(c),
and to the conspiracy to murder Randolph Pizzolo in aid of
racketeering, in violation of Title 18, United States Code,

Section 1959(a)(5).  Aiello's Sentencing Guidelines carried a range of imprisonment from thirty years to life, but the statutory maximum penalty was thirty years.  On December 16, 2008, this Court sentenced Aiello to the maximum term of imprisonment available - thirty years - plus three years of supervised release and a $200 assessment.  Massino was available to testify about Aiello's involvement in the Pizzolo murder, about which Massino had learned from Basciano's admissions and statements on the Massino Tapes.  Massino was also prepared to testify regarding Aiello's rank in the family, which he had likewise learned from Basciano.  In the government's view, the Massino Tapes and Massino's availability as a witness contributed heavily to Aiello's decision to plead guilty.

> f.   Frank Esposito ("Fat Frank")

Frank Esposito was a Bonanno family associate.  On April 18, 2006, Esposito pled guilty to Count Seventeen of a sixth superseding indictment (illegal gambling - bookmaking).  On August 11, 2006, the Court sentenced Esposito to time served. Massino provided information regarding Esposito's association with the Bonanno family and his involvement in illegal gambling, and could have been called as a witness if Esposito had decided to go to trial.

2.   <u>The Basciano II Trial</u>

Defendant Vincent Basciano, as to whom the Attorney General directed the government to seek the death penalty, is the only defendant who went to trial in this case.  Following extensive pre-trial litigation, including an interlocutory appeal to the Second Circuit, the charges against Basciano by the time of trial were conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and firearms charges, in violation of 18 U.S.C. § 924(c), all in relation to the Pizzolo homicide.  The trial commenced in February 2011 with jury selection, and concluded after a guilt phase and a penalty phase in early June 2011.  Massino's detailed testimony regarding his conversations with Basciano following Basciano's November 2004 arrest, and the content of the Massino Tapes, comprised critical evidence at Basciano's trial.  As noted <u>supra</u>, Massino's testimony in that case is provided in support of this motion as Exhibit A.  After trial, Basciano was convicted of all charges.  Massino's testimony and the Massino Tapes were essential evidence at the trial and undoubtedly contributed to Basciano's conviction, for which the Court sentenced Basciano to life in prison following the jury's determination against the death penalty.

B.   <u>Andres Threat Investigation</u>

Also in 2004, Massino provided the government with information about Basciano's desire to kill former AUSA Greg Andres.  As with the Pizzolo homicide, the Andres plot was discussed on the Massino Tapes, during which Basciano acknowledged that he has spoken to Massino about killing Andres. Excerpts of the consensual audio recordings that Massino made on this topic were played during the penalty phase of Basciano's 2011 trial.  Although the jury ultimately determined that Basciano should be sentenced to life in prison, not death, Massino's testimony during the penalty phase provided important sentencing phase evidence.

C.   United States v. John Joseph Spirito & Patrick
     <u>DeFilippo, 03-CR-929 (NGG)</u>

Beginning in August 2003, a grand jury sitting in the Eastern District of New York returned a series of indictments and superseding indictments against various members and associates of the Bonanno family.  Most of the defendants pled guilty, including John Joseph Spirito.  Specifically, Spirito pled guilty in September 2005 to racketeering conspiracy involving, as a predicate act, the murder of Gerlando Sciascia.  Pursuant to the terms of his plea agreement, Spirito was sentenced to a term of imprisonment of twenty years.  Although the defendants in this case were indicted prior to Massino's cooperation, Massino's availability as a witness against Spirito likely influenced his

25

determination to plead guilty.  Massino, who had personally approved the plot to murder Sciascia, would have been available to testify against Spirito had he chosen to proceed to trial.

Two defendants in the case did proceed to trial: Bonanno family acting boss Vincent Basciano and longstanding Bonanno family captain Patrick DeFilippo.  DeFilippo was charged with criminal conduct that spanned the period from January 1979 to January 2005, and included the conspiracy and attempted murder of David Nunez, the conspiracy to murder, and murder of, Bonanno family captain Gerlando Sciascia, and the conspiracy to murder, and murder of, Frank Santoro.  Both defendants were convicted at trial (although not of all charges).  Specifically, DeFilippo was convicted of racketeering conspiracy involving predicate acts of illegal gambling, the conspiracy to murder David Nunez, extortionate collection of credit conspiracy and extortionate extension of credit.  DeFilippo was also charged with the murder of Gerlando Sciascia in aid of racketeering, but the jury was unable to unanimously decide whether the government had proven DeFilippo's guilt as to the Sciascia murder and thus hung on the murder in aid of racketeering charge and the corresponding RICO predicates.[6]  DeFilippo was sentenced on March 14, 2007

---

[6]  However, based on the note produced by the jury on May 9, 2006, marked as Court Exhibit 34, eleven jurors apparently found DeFilippo to be guilty of both the racketeering act related to the Sciascia murder and the murder in aid of racketeering of Sciascia.

principally to a term of forty years' imprisonment.[7]  In connection with his sentencing, the government submitted Massino's guilty plea allocution to the Sciascia murder to the Court in support of the government's argument that DeFilippo should be sentenced to the maximum term allowable by law.

     D.   <u>United States v. Urso, et al., 03-CR-1382 (NGG)</u>

        On January 15, 2004, a grand jury sitting in the Eastern District of New York returned a twenty-count superseding indictment charging twenty-eight defendants in <u>United States v. Urso, et al.</u>, 03-CR-1382 (NGG).  The <u>Urso</u> prosecution charged each active member of the Bonanno family administration then at liberty and virtually every criminal supervisor in that enterprise.  In total, twenty-eight members and associates of the Bonanno family were indicted for more than fifty different criminal acts, including sixteen murders, murder conspiracies, and attempted murders.  Every indicted defendant has either pled guilty or been convicted after trial, including the acting boss/acting consigliere, the acting underboss, eight then or former captains or acting captains, thirteen soldiers, including

---

    [7]  Specifically, the Court sentenced DeFilippo to twenty years' imprisonment on Count One (racketeering conspiracy), five years' imprisonment on Count Two (illegal gambling - joker-poker), five years' imprisonment on Count Three (illegal gambling - bookmaking conspiracy), five years' imprisonment on Count Four (illegal gambling - bookmaking) and five years' imprisonment on Count Five (extortionate collection of credit conspiracy), all to run consecutively to each other.

a powerful member of the mafia from Canada, and four associates.
Twenty-four defendants were charged with racketeering conspiracy,
which included predicate acts of attempted murder, murder
conspiracy, murder, illegal gambling, extortion, loansharking,
narcotics trafficking, robbery conspiracy, and mail fraud.  A
summary of certain of the defendants against whom Massino could
have testified, or as to whom he provided relevant evidence, is
set forth below.

         The Bonanno family has thrived on violence for decades,
a fact demonstrated over and again by the <u>Urso</u> investigation.
The charged crimes – largely unsolved prior to the indictment in
this matter – vividly demonstrated the systematic violence
carried out by the Bonanno family.  Those crimes included the
attempted murder of Anthony Coglitore, who was gunned down in his
driveway in 1978 due to suspicion that he was involved in an
attempted murder of a Bonanno family soldier; the May 1981 triple
murder of the Three Captains; the August 1981 murder of Bonanno
family captain Dominick "Sonny Black" Napolitano; the November
1983 murder of Enrico Mazzeo, a former deputy commissioner of the
New York City Marine and Aviation Department, killed because the
Bonanno family feared he might cooperate with law enforcement;
the April 1984 murder of Bonanno family captain Caesar Bonventre,
whose mutilated body was stuffed into steel barrels in a
warehouse in  New Jersey; the May 1986 double murder of Robert

Capasio and Joseph Platia; the 1987 murder of Bonanno family captain Gabriel Infanti, whose body was never recovered; the January 1990 murder of Bonanno family associate Louis Tuzzio due to his involvement in shooting a relative of a high ranking member of the Gambino family; the May 1990 murder of Bonanno family associate Anthony Tomasulo due to his refusal to pay gambling proceeds; the May 1991 murder of Bonanno family soldier Russell Mauro, whose body was left in a body bag in the trunk of a parked car; the March 1992 murder of Sebastian DiFalco, who was killed by gunshot wounds to the head and brain; and the April 1992 murder of Robert Perrino, who, while controlling the Bonanno family's operations at the New York Post, was killed due to mere suspicions that he was cooperating with law enforcement. These murders, and others, preserved and protected the Bonanno family's various illegal "rackets," including gambling and narcotics operations, extortions, loansharking, robberies, and other fraud schemes. Although the charges in the Urso case were returned by the grand jury prior to Massino's decision to cooperate, Massino's availability as a witness was likely a factor in the decision of several of the Urso defendants' determination to plead guilty. As detailed below, Massino was available to testify as a witness to certain of the Urso defendants' involvement in murders.

29

The compelling evidence gathered during the <u>Urso</u> investigation, including the availability of Massino and several other cooperators as witnesses, ultimately led to guilty pleas by twenty-five defendants, which included substantial sentences for Bonanno family acting boss and acting consigliere Anthony Urso and Bonanno family acting underboss Joseph Cammarano, as well as substantial pleas for other defendants. More specifically, Massino provided information to the government regarding the Bonanno family's involvement in running the charged baccarat game, and was available to testify as a witness, in regard to the following defendants, all of whom pled guilty.

1.   <u>Louis Attanasio</u>

Louis Attanasio was a longtime member of the Bonanno family who held a series of high-ranking positions and who served a series of prison terms, some for violations of his supervised release. He previously served as both a captain in the Bonanno family and the acting underboss. Attanasio was arrested on twelve occasions from 1961 to 1996 for crimes including assault, criminal possession of a deadly weapon, tax charges, forgery, possession of a forged instrument, filing a false instrument, and loansharking.

In the <u>Urso</u> prosecution, Attanasio was indicted for racketeering conspiracy that included predicate acts charging loansharking, illegal gambling, and the conspiracy to murder, and

30

murder of, Caesar Bonventre.  With respect to the Bonventre
murder, Attanasio served as the shooter.  Bonventre's body was
found mutilated on April 16, 1984, stuffed in steel barrels in a
warehouse in New Jersey.  After the murder, Attanasio took over
as the captain of Bonventre's crew.  Although not a participant
in the actual killing, Massino was a conspirator in the Bonventre
murder and thus knew about Attanasio's involvement in the
Bonventre murder, and has identified Attanasio as the shooter.

Attanasio pled guilty in August 2006 (including for
crimes related to the Bonventre murder) and he was sentenced by
this Court to a term of fifteen years' imprisonment, three years
of supervised release, and a $100 special assessment.

2.  <u>Peter Calabrese</u>

At the time of his arrest, Peter Calabrese was a
longtime soldier and then captain in the Bonanno family and a
member of the Bonanno family's "ruling panel."  He was indicted
for racketeering conspiracy, which included the following
predicate acts: illegal gambling, murder/murder conspiracy, and
loansharking.  He was also charged with substantive counts.
Calabrese had been previously arrested as well: his criminal
history dated back to 1972, when he was first arrested for
possession of a forged instrument and "criminal simulation."
Calabrese had also been arrested in 1980, 1981, and 1987, for a
series of gambling and loansharking offenses.  Massino, who had

31

placed Calabrese on the ruling panel of the Bonanno family, was
available to testify as to Calabrese's position in the crime
family.

On August 17, 2006, Calabrese pled guilty to
racketeering offenses, which included the conspiracy to murder
Bonventre, and he was ultimately sentenced on September 20, 2006,
by this Court to a term of fifteen years' imprisonment, three
years of supervised release, and a $100 special assessment.

### 3.   Richard Riccardi

Richard Riccardi was a soldier in the Bonanno family;
he was charged with racketeering conspiracy, which included
predicate acts charging the conspiracy to murder and murder of
Dominick "Sonny Black" Napolitano and Robert Capasio.  On April
28, 2006, Riccardi pled guilty to the conspiracy to murder
Bonanno family associate Ronald Filocomo in aid of racketeering
and he was sentenced, on November 17, 2006, to ten years'
imprisonment, the maximum available sentence under the statute.
He also received three years of supervised release and a $100
special assessment.  Massino, who was a conspirator in the
murders of Napolitano and Capasio, provided information regarding
Riccardi's participation in these murders.

### E.   United States v. Virtuoso, et al., 06-CR-800 (SLT)

On November 8, 2006, the government filed a sealed
complaint against Michael Virtuoso, also known as "Mike the

Butcher," charging him with his involvement in conspiring to participate in the use of extortionate means to collect extensions of credit, see United States v. Virtuoso, M-06-1171. As detailed in the complaint against Virtuoso, at the time of his involvement in the charged extortion, Virtuoso was a soldier in the Bonanno family who, together with other members and associates of organized crime including Michael Cassese and Agostino Accardo, used extortionate means to collect and attempt to collect from debtors.  On December 6, 2006, a grand jury returned an indictment against Virtuoso, Cassese and Accardo charging them with making an extortionate extension of credit, using extortionate means to collect an extension of credit, and conspiring to use extortionate means to collect an extension of credit.  Virtuoso, 06-CR-800 (SLT).

Thereafter, on February 1, 2007, a grand jury sitting in the Eastern District of New York returned a thirty-nine count superseding indictment in the case, charging additional crimes against Virtuoso and Cassese, and superseding into the indictment additional defendants.  The new defendants were the highest ranking members of the Bonanno family then at liberty – including Bonanno family acting consigliere Anthony Rabito, Bonanno family acting underboss Nicholas Santora, Bonanno family captains Jerome Asaro and Louis DeCicco, and Bonanno family acting captain Joseph Cammarano, Jr., among others.  Massino provided important

33

information as to several defendants with respect to their involvement in the charged racketeering enterprise and in a number of crimes committed on behalf of the enterprise.  He was also available to testify in the event of trial, which was not necessary because, ultimately, each defendant pled guilty.

      1.   Michael Virtuoso, Michael Cassese
          & Agostino Accardo

As noted above, at the time of his arrest, Virtuoso was a soldier in the Bonanno family.  Likewise, Michael Cassese was charged as a soldier in that enterprise.  Also as set forth above, Virtuoso, Cassese and Accardo were all initially charged together in this case with making an extortionate extension of credit, using extortionate means to collect an extension of credit, and conspiring to use extortionate means to collect an extension of credit.  All three men ultimately pled guilty: Virtuoso pled guilty to racketeering and was sentenced to 32 months of imprisonment; Cassese pled guilty to racketeering and was sentenced to 90 months of imprisonment; and Accardo pled guilty to making an extortionate extension of credit and was sentenced to 21 months of imprisonment.

Prior to Virtuoso's arrest, Massino had provided information to the government regarding Virtuoso's shylocking business.  In addition, as detailed in the complaint against Virtuoso, information from the recording Massino made on January 3, 2005, was used to explain Michael Cassese's affiliation with

34

organized crime.  More specifically, the complaint set forth that Cassese, one of Virtuoso's coconspirators, had been captured on a consensual recording stating, in substance, that his organized crime connection was to Anthony Rabito.  Details from the January 3, 2005 Massino Tape were also included in the complaint, to make clear that Vincent Basciano had recently appointed Rabito to the position of acting consigliere.

        2.   <u>Anthony Rabito</u>

At the time of his arrest, Rabito was the acting consigliere of the Bonanno family and a convicted felon several times over.  Rabito was charged with racketeering and racketeering conspiracy, including predicate acts of illegal gambling, extortionate collection of credit and extortion. Rabito was also charged with various substantive crimes for these acts.  Rabito pled guilty to these charges and was sentenced by the Honorable Sandra L. Townes, United States District Judge, principally to a term of thirty-three months' imprisonment.  One of the extortions underlying the racketeering charge was the extortion of the Via Oreto restaurant.  The consensual recordings made by Massino captured Basciano talking about the Via Oreto extortion, and would have been played at trial if Rabito had not entered a guilty plea.

Massino also implicated Rabito in both the 1976 murder of Vito Borelli and the 1981 murders of the Three Captains.

3.   <u>Paul Spina</u>

In addition, Massino was available to testify regarding
Paul Spina's involvement in a conspiracy to murder Joseph
Bonelli, about which Massino learned from Basciano.  As Massino
testified at the <u>Basciano II</u> trial and as was captured on the
Massino Tapes, Basciano and Spina had agreed to kill Bonelli due
to the fact that Bonelli had "shot up" a restaurant (Napa &
Sonoma) that was associated with the Bonanno family.

Paul Spina is a longtime soldier in the Bonanno family
who was charged with racketeering conspiracy including the
following predicate acts: murder conspiracy of John Doe #1;
extortionate collection of credit; extortion conspiracy;
extortion – Napa & Sonoma Restaurant; and murder conspiracy –
John Doe #8.  Spina was also charged in other substantive counts
covering this conduct.

Massino provided information about Spina and his
association and position in the Bonanno family, as well as about
his involvement in one of the charged murder conspiracies, which
information was corroborated by the coconspirator statements
captured on the Massino Tapes.  Spina ultimately pled guilty to
conspiracy to commit murder in aid of racketeering, and he was
sentenced by Judge Townes principally to 106 months'
imprisonment.

4.   Jerome Asaro

Jerome Asaro served as a captain in the Bonanno family. He pled guilty to racketeering conspiracy, which included predicate acts of illegal gambling (bookmaking) and extortionate collection of credit, and he was ultimately sentenced by Judge Sandra L. Townes principally to thirty months' imprisonment. Massino provided important information, including Asaro's association with and position in the Bonanno family and his role in one of the charged illegal gambling schemes (baccarat), which led to Asaro's indictment and conviction.

F.   United States v. Carucci, et al., 08-CR-597 (CPS)

On August 27, 2008, a grand jury sitting in the Eastern District of New York returned an indictment charging Bonanno family acting captain John Contello, Bonanno family soldier Vincent Disario and others with, among other charges, racketeering, racketeering conspiracy, extortion, illegal gambling and structuring.  Massino was prepared to testify as to Contello's and Disario's association with and membership in the Bonanno family.  Both defendants were convicted by guilty plea.

G.   United States v. Bana, et al., 09-CR-672 (NGG)

In September 2009, a grand jury sitting in the Eastern District of New York returned a thirty-three count indictment charging fourteen members and associates of the Bonanno family, including Bonanno family captains Joseph Sammartino (who at the

37

time was also a member of the Bonanno family ruling panel) and
Anthony Sclafani, Bonanno family acting captains Anthony Pipitone
and Joseph Loiacono, and Bonanno family soldier Paul Spina.

Massino was an important witness to this prosecution -
providing evidence about the charged enterprise, the role of
several defendants in that enterprise and evidence of specific
crimes.  All of the defendants pled guilty before trial and
several of the most culpable and powerful defendants, including
Loiacono and Sclafani, pled guilty knowing that Massino would be
a key trial witness against them.

H.   <u>United States v. Armando Rea, 10-CR-767 (JBW)</u>

Massino's cooperation was also instrumental in
obtaining an indictment charging Armando Rea, a soldier in the
Bonanno family, with racketeering conspiracy, including gambling,
extortion conspiracy, murder conspiracy and murder as predicate
racketeering acts.  Specifically, Massino provided information
implicating Rea in an illegal gambling operation controlled by
Massino between 1979 and 1980 and advised that Rea was inducted
into the Bonanno family in approximately 1992.  In addition,
Massino's recording of Basciano in January 2005 revealed that
Rea, who had relocated to Las Vegas, Nevada, remained a member of
the racketeering conspiracy, bringing the racketeering conspiracy
within the statute of limitations.  In advance of trial, the
prosecution team prepared Massino in the event that he was called

38

to testify, and he was available as a witness.  On the eve of
trial, however, Rea pled guilty to extortion conspiracy, and was
later sentenced to a term of probation.

> I.   United States v. Anthony Romanello,
>      10-CR-929 (S-1)(ILG)

In 2011, Genovese family acting captain Anthony
Romanello was charged in a superseding indictment with
racketeering conspiracy in the Eastern District of New York,
including predicate acts of extortionate collection of credit
conspiracy, illegal gambling and extortion conspiracy; and use,
carrying and possession of a firearm.  On January 10, 2012,
Romanello pled guilty, pursuant to a plea agreement, to
racketeering conspiracy, including predicate acts of illegal
gambling and extortion conspiracy.  Massino was debriefed by the
government in anticipation of the trial, however, and was
available to testify at trial about Romanello's position in the
Genovese family, his association with Genovese captain Anthony
"Tough Tony" Federici and the rules, structure, hierarchy,
protocols and interactions of the Bonanno and Genovese families.

> J.   United States v. Badalamenti, et al., 12-CR-050 (CBA)

In January of 2012, a grand jury sitting in the Eastern
District of New York returned a 14-count superseding indictment
charging five defendants – Vincent Badalamenti, also known as
"Vinny TV," Vito Balsamo, Anthony Calabrese, Anthony Graziano,
also known as "TG," and Nicholas Santora, also known as "Nicky

Mouth" - variously with racketeering and racketeering conspiracy over a period of a dozen years, including multiple predicate acts of extortion and extortion conspiracy.  Massino was an integral witness to this prosecution as he was expected to testify to the defendants' association with and membership in the Bonanno family, as well as their participation in crimes on behalf of the Bonanno family.  All of these defendants pled guilty prior to trial.

In April 2012, Genovese family acting captain Anthony Romanello was charged in a superseding indictment in this case. Romanello was charged, together with Bonanno captain Nicholas Santora, with extortionate collection of credit conspiracy for their respective roles in conducting an inter-family "sitdown" in an effort to resolve a dispute over a debt.  Santora pled guilty and was ultimately sentenced to 27 months' imprisonment.  Massino met with the government and was prepared to testify at Santora's trial.  In November 2012, Massino testified at Romanello's trial. Massino testified extensively about the rules, hierarchy, structure and origins of La Cosa Nostra in New York City and throughout the world.  In addition, Massino specifically testified about Romanello's rank and membership in the Genovese family, his association with Genovese captain Anthony Federici and other associates of organized crime in Queens.  Massino also provided information relevant to the charged crimes, insofar as

40

he testified regarding the rules surrounding a mafia "sitdown" –
explaining that such meetings can be binding negotiations in
organized crime between various LCN families, and that the
outcome of a sitdown can be enforced, often with violence or
threats of violence.  Although Romanello was ultimately found not
guilty by a jury, Massino's testimony was crucial to the
government's case.  A copy of Massino's direct examination in
Romanello is included as Exhibit B in the government's appendix
in support of this motion.

> K.   United States v. Jimmy Cournoyer, et al.,
>      12-CR-065 (S-2)(RJD)

Massino also provided assistance in the prosecution of
defendants Jimmy Cournoyer, Alessandro Taloni and John Venizelos
in United States v. Jimmy Cournoyer, et al., 12-CR-065
(S-2)(RJD).  In this case, the defendants were charged variously
with narcotics trafficking charges, and related firearms and
obstruction counts.  All three defendants ultimately pled guilty;
however, prior to their guilty pleas, Massino participated in a
witness preparation session with the government.  Had the
defendants proceeded to trial, Massino would have been an
important witness to testify regarding background about Vito
Rizzuto, the leader of the Montreal-based organized crime crew
that has a long-term connection to the Bonanno crime family.

II.   Intelligence and Investigations

     In addition to the foregoing assistance in support of
specific cases and prosecutions, the government has made
substantial investigative use of Massino's information, and the
information contained on the Massino Tapes.  More specifically,
during the course of debriefing, Massino provided information
about hundreds of individuals involved in traditional organized
crime activities in the New York City area and Canada, among
other locations.  The background information he has provided has
been disseminated to all of the squads within the Federal Bureau
of Investigation that are responsible for investigating La Cosa
Nostra in the New York City field office.

     In addition, the government has taken a number of
investigative steps based on information provided by Massino.
More specifically, Massino's information has been used in at
least three search warrants, which searches yielded evidence
pertinent to ongoing investigations, electronic surveillance
applications and in ongoing investigations.

     A.   Three Captains Body Search

     In October 2004, FBI Special Agents executed a search
warrant at a vacant lot in Queens based on information provided
by Massino and others, and recovered the remains of Bonanno
family captains Philip "Phil Lucky" Giaccone and Dominick "Big
Trin" Trinchera.  Giaccone and Trinchera were murdered and their

42

bodies were buried more than two decades earlier in May of 1981 after the Three Captains murder.  This evidence would have been used at the trial of Bonanno family soldier Vito Rizzuto, but Rizzuto pled guilty prior to trial.

B.  Search Warrant for the Residence of Anthony Sclafani and the Person of Joseph Loiacono

As noted above, Massino's information was used in the successful prosecution of Bonanno captain Anthony Sclafani and acting captain Joseph Loiacono.  As a specific example, in part as a result of information provided by Massino, the government obtained search warrants for Anthony Sclafani's house and Joseph Loiacono's person, which developed additional evidence against both defendants.

C.  Electronic Surveillance

Massino's information was also used in applications in 2009 and 2010 to obtain authorization to intercept communications.

D.  Cooperation of Others

Information provided by Massino also led to the arrest, and ultimately the cooperation, of at least three other individuals.  Those individuals, in turn, provided substantial assistance in the investigation and prosecution of cases.  These defendants' successful cooperation can be traced, at least in part, directly to Massino's own cooperation.

CONCLUSION

Massino's cooperation provided substantial assistance in the government's prosecution of numerous cases, and the government expects that he will continue to provide assistance in other investigations and cases as they arise.  In addition, Massino's provision of extremely extensive organized crime intelligence information has assisted the government in ongoing investigations and will continue to be of assistance for many years in the future.  Should the Court grant the government's Rule 35 Motion and reduce Massino's sentence, the government expects that Massino will continue to cooperate in future cases if called to do so.  Due to Massino's unique perspective on the history of the American mafia, the intelligence information that he was able to provide the government as a result of his extensive knowledge of organized crime was very useful in the government's long-term effort to eradicate organized crime. Massino's cooperation thus provided, and will continue to provide, substantial assistance.

Finally, there also remain important policy implications to his sentence.  Despite his vast personal history of criminal conduct, the government needs cooperators like Massino to uncover criminal activity, particularly those perpetrated by enterprises like La Cosa Nostra, whose members are often careful to avoid law enforcement scrutiny and surveillance,

44

enabling them to commit crimes for decades without law enforcement detection.  Without cooperating witnesses like Massino, all too often these crimes go unsolved and those responsible unpunished.  In addition, as the first official boss of the American mafia to testify publicly, Massino's cooperation was an important milestone in the decades-long effort by the Department of Justice to dismantle and uproot La Cosa Nostra. His testimony sent a powerful message to the criminal world that the mafia is not an organization with honor, but a criminal society that feeds off of murder, violent crime and victimization.

* * * * *

For the reasons detailed herein, the government makes this motion to permit the Court, in its discretion, to resentence Massino pursuant to Federal Rule of Criminal Procedure 35(b)(2)(B), in <u>United States v. Massino</u>, Docket Nos. 02-CR-307 (NGG) ("<u>Massino I</u>") and 03-CR-929 (NGG) ("<u>Massino II</u>").

Dated:   Brooklyn, New York
         June 10, 2013

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

Taryn A. Merkl
Assistant U.S. Attorney
     (Of Counsel)